AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone with a cracked back (inventoried as<br>#412-2025-IE-000036) | )<br>)<br>)<br>)<br>)<br>)<br><br>Case No.   **25-mj-00522** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein,

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1029(a)(2), (b)(2) | Access Device Fraud Conspiracy |
| 18 USC 1029(a)(2), (b)(1) | Use and Attempted Use of Unauthorized Access Devices |

The application is based on these facts:

See Attached Affidavit of USSS Special Agent Erik La Com, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

USSS Special Agent Erik La Com

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: _____02/05/2025_____

*Judge's signature*

City and state:  San Diego, California

Hon. Allison H. Goddard, US Magistrate Judge

*Printed name and title*

## STATEMENT OF FACTS

I, Erik La Com, being duly sworn, state as follows:

1.    This affidavit is in support of an application by the United States of America for a warrant to search the following electronic devices, as described in Attachment A:

a.    Black Apple iPhone with a cracked back (inventoried as #412-2025-IE-000036) ("Target Device")

for items from July 1, 2022 through and including October 3, 2024, that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. §§ 1029(a)(2) (use of unauthorized access devices). 1029(a)(4) (production or possession of device-making equipment), and 1029(b)(2) (access device conspiracy), as described in Attachment B.  This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

## EXPERIENCE AND TRAINING

2.    I have been employed as a Special Agent ("SA") with the United States Secret Service ("USSS") since June 2010.  I am currently assigned to the SoCal Cyber Fraud Task Force (SoCal CFTF).  The SoCal CFTF is a task force sponsored by the USSS that is comprised of state, local, and federal law enforcement agents. In this capacity, my duties are to investigate violations of federal and state law, including financial crimes and related activity in connection with the fraudulent use of access devices, credit card skimming/re-encoding, identity theft, wire fraud, mail fraud, check fraud, bank fraud, and the manufacturing of counterfeit currency/commercial securities, and the use of complex schemes to conceal and launder the proceeds of such crimes.  I am familiar with the criminal elements and schemes commonly employed by persons who commit these types of violations.  I am also familiar with the use of computers and specialized electronics to commit these crimes, and I have arrested suspects who have utilized computers and specialized electronics to commit EBT theft, identity theft, credit and debit card fraud, and the manufacturing of counterfeit United States currency.

3.    I am also a digital forensic examiner for the USSS and a member of the Electronic Crimes Special Agent Program (ECSAP).  My training includes, but is not limited to, recovering evidence of hacking, network intrusion, data compromise, etc., the capture and analysis a forensic image of a hard disk drive, acquiring random access memory (RAM) for analysis, the capture and analysis of a cellphone, skimmers, vehicle infotainment systems or other mobile device storage for analysis, maintaining the integrity of computer forensic analysis and evidence, and verifying the integrity of computer systems.  I have testified as a computer expert witness in State and Federal court.

4.    The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this and related investigations into California Electronic Benefit Transfer (EBT) fraud; my review of documents and records related to this and related investigations; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Dates, times, and amounts are approximate.

STATEMENT OF PROBABLE CAUSE

*Overview*

5.    The USSS and the SoCal CFTF are working with state and federal agencies to investigate the theft and misuse of funds electronically distributed to individuals receiving public assistance.  As part of this investigation, the SoCal CFTF identified members of an access device fraud conspiracy that included Dorin Mirel MIHAILESCU, aka "Stefan Holub," Vasile Liviu Ardelianu, aka "Filippo Caltagerone," Carmen Mihaela Paraschiv, and Aurelian Cornel Bucur, aka "Roman

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
-2-

Bohacek," who have repeatedly made unauthorized withdrawals from victims' electronic benefit transfer (EBT) public benefit accounts at San Diego-area ATMs and installed unauthorized skimming equipment on San Diego-area ATMs and point-of-sale terminals.

6.    On October 8, 2024, U.S. Magistrate Judge Daniel E. Butcher signed a Complaint (24MJ3848) charging MIHAILESCU, Ardelianu, and Paraschiv with Access Device Conspiracy, in violation of 18 U.S.C. § 1029(a)(2) and (b)(2) (Count 1), and two counts charging just MIHAILESCU with Use and Attempted Use of Unauthorized Access Devices (Counts 2 and 3).  The affidavit submitted in support of the Complaint described how members of the conspiracy used stolen EBT account information issued to public benefit recipients to make unauthorized withdrawals from those recipients' EBT accounts and installed skimming devices in San Diego.  Bucur was charged separately in Case No. 24MJ0854 for the substantive offenses that he committed during the conspiracy.  Bucur has pled guilty and is awaiting sentencing.

7.    MIHAILESCU is currently in custody and represented by Gretchen C. VonHelms and Jan E. Ronis.  Ardelianu and Paraschiv remain at large and their current whereabouts are unknown.

*Background on Electronic Benefit Transfer Cards*

8.    In the Summer of 2022, California's Department of Social Services (CalDSS) advised the SoCal CFTF that it had detected a rise in fraud associated with the electronic debit cards issued to individuals and families who qualify for California public benefits like CalFresh and CalWORKS.

9.    The U.S. Department of Agriculture also noticed a rise in fraud associated with the Supplemental Nutrition Assistance Program (SNAP) that it administers through its Food and Nutrition Service (FNS). SNAP is a federally funded assistance program designed to help low-income individuals and families purchase food. In California, SNAP public assistance benefits are distributed through CalFresh and

loaded to an account that a qualified recipient access by means of an access card, similar to a debit or credit card, called the California Advantage Electronic Benefit Transfer (EBT) Card. The EBT card system was developed to enable government agencies in California and many other states to deliver public assistance benefits to recipients using electronic transfers. The EBT system is a computer-based system through which authorization for qualifying food purchases and cash withdrawals is received from either a point-of-sale (POS) terminal or an ATM.

10.    The U.S. Department of Health and Human Services, Administration for Children and Families, administers the Temporary Assistance to Needy Families (TANF) program.  TANF is a federally funded assistance program that awards grants to individual states to support low-income families with children.  In California, TANF grant funds are used to operate CalWORKS, a state public assistance program that provides cash aid to eligible families with one or more children in the home.  Families that apply and qualify for ongoing CalWORKS assistance receive money each month to help pay for housing, food, and other necessary expenses.   Like CalFresh, CalWORKS benefits are distributed by CalDSS through the California Advantage EBT card.

11.    After a recipient applies for and is approved to receive California public assistance benefits, the benefits are automatically distributed to the recipient's EBT card on a designated day of the month (typically, in California, the first five days of the month). To access their benefits to purchase eligible food items, recipient swipe their card through a point-of-sale terminal, or insert it into an ATM, that records the card number, date, time, and amount of the transaction. The recipient then enters his/her Personal Identification Number (PIN) into a keypad to complete the transaction.

12.    The SoCal CFTF has gathered evidence indicating that members of what appear to be one or more criminal enterprises are stealing California EBT account information by installing skimmers on point-of-sale terminals at stores and ATMs in

communities with higher concentrations of public benefit recipients. The skimmed data is then often re-encoded onto the magnetic strips of cards that members of the conspiracy use to make unauthorized withdrawals and purchases. These re-encoded cards are sometimes referred to as "cloned" cards. Cloned cards can be a blank white plastic card, or another debit, credit, or gift card. Cloned cards may have names or numbers embossed on the physical face of the card. A common feature of cloned cards is that the account number encoded on the card's magnetic strip will not match the number embossed on the card's face. To facilitate the use of the stolen EBT benefits, members of the scheme will commonly put stickers bearing the account's PIN on the physical cards, or access devices, that are swiped at a point-of-sale terminal along with the account balance.

13.    Data provided by CalDSS indicated that, between approximately June 2022 and January 2025, in the Southern District of California and elsewhere, more than approximately $236 million has been successfully stolen using compromised EBT account information. Most of the stolen funds were obtained through unauthorized ATM withdrawals.

<u>Prior Southern California EBT Fraud Operations</u>

14.    In July and August 2022, the SoCal CFTF learned of connected incidents at Walmart stores in Chula Vista, National City, and Sherman Heights involving overlay skimmers. In June 2022, National City Police arrested a Romanian national who was caught installing an overlay skimmer without authorization at a National City Walmart. In July 2022, employees at a Chula Vista Walmart discovered an unauthorized overlay skimmer installed on a point-of-sale terminal. Store surveillance footage showed that the individual arrested by National City Police had, along with an unidentified coconspirator, installed the overlay skimmer at the Chula Vista Walmart two days before his arrest in National City. When arrested by National City Police, the suspect presented a fake European ID that misrepresented his name and nationality. Record

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-5-

checks revealed his true name, Romanian nationality, and indicated that he had entered the U.S. without inspection. Additional investigation revealed that this individual, or someone closely matching his appearance, had installed an overlay skimmer at a Sherman Heights Walmart in March 2022 with the assistance of two additional coconspirators.

15.    In Spring 2023, the USSS conducted operations in the Southern and Central Districts of California during which it surveilled ATMs that had historically been used to make unauthorized EBT account withdrawals. During the March operation in Los Angeles, the USSS arrested 14 individuals. During its June 2023 operation, the USSS-San Diego and SoCal CFTF arrested five individuals, along with a sixth individual in July 2023. Five of the six individuals arrested in San Diego County had a history of making of unauthorized EBT account withdrawals in San Diego prior to the night of their arrest and all six had one or more phones on them when arrested. Several of these individuals had also previously installed skimming devices on point-of-sale terminals or inside ATMs, and/or were found in possession of access-device making equipment at the time of their arrest. Of the 20 people arrested in Southern California between March and July 2023, all but one were Romanian. Many of the Romanians arrested possessed fake European IDs.

16.    As part of its broader investigation into the theft of EBT account benefits, the SoCal CFTF has obtained warrants to seize and search the phones of individuals engaged in skimming and EBT access device fraud activities. The consistent pattern is that individuals engaged in these activities are using phones in furtherance of the fraud. Examples include using phones to store and transmit stolen EBT account information, using phones to communicate with co-conspirators in furtherance of the fraud, using phones to reserve and manage access to short-term rental accommodations and rental vehicles, using phones to navigate and for other location-related searches and services (including researching the locations of bank ATMs), using phones to conduct balance

inquiries on stolen EBT accounts to determine the amount of the benefit and the date it will be deposited, and using phones to record and photograph fraud-related activities.

<u>MIHAILESCU's Fraudulent Activities</u>

17.    MIHAILESCU is Romanian and appears to have entered the United States without inspection.   Government records indicate that MIHAILESCU possesses a Washington State driver's license under the name of "Stefan Holub." Driver's license # WDL393S8123B, which was issued on June 6, 2022.  Ardelianu, Paraschiv, and Bucur are also Romanian.

18.    The SoCal CFTF obtained records for a Bank of America bank account that MIHAILESCU opened using the "Stefan Holub" alias, along with ATM surveillance images for deposits and withdrawals made to that account.  These records show that Paraschiv deposited $3,500.00 into the "Stefan Holub" account on July 22, 2022; Ardelianu deposited $200 into the "Stefan Holub" account on July 30, 2022; an uncharged coconspirator who made unauthorized withdrawals with MIHAILESCU in October 2022 deposited $100 into the account on October 25, 2022; and a different coconspirator, Constantin Tudor Trofin (charged separately in 23cr1655-JO) made repeated deposits to the account between November 2022 and March 2023.

19.    As part of its broader EBT fraud investigation, the SoCal CFTF collects surveillance images and transaction records for fraudulent EBT withdrawals from ATMs across San Diego County.  Through the review of these and related records, the SoCal CFTF documented MHAILESCU, Ardelianu, Parschiv, and Bucur's involvement in fraudulent EBT withdrawals.  Between June 1, 2022 and September 1, 2022, the four coconspirators attempted to withdraw at least $72,590.00 from victims' EBT accounts at San Diego County ATMs.

20.    The SoCal CFTF also collected surveillance images showing MIHAILESCU and Ardelianu installing skimming devices in August 2024.  In one instance, the two worked together to install an overlay skimming device on a point-of-

sale terminal at a Chula Vista 7-11.  In another, MIHAILESCU installed a skimming device and pinhole camera at a San Diego Bank of America ATM.

21.    Periodically, the SoCal CFTF also conducted surveillance at ATMs where fraudulent withdrawals had previously occurred.  During such an operation, early on the morning of September 1, 2022, the SoCal CFTF received reports of unauthorized EBT withdrawals occurring at an ATM located on College Grove Drive.  Task force members observed the man making the unauthorized withdrawals and, using ATM surveillance photos provided by a bank investigator, determined that he matched the appearance of a man who had made unauthorized withdrawals about an hour earlier at a different San Diego ATM.  Officers arrested the man (eventually identified as Bucur) when he stepped away from the ATM and placed him under arrest.  During an inventory search, the officers found skimming tools, a skimmer, cards on which were written numbers that appeared to be the PIN, and three cell phones.

22.    While officers were dealing with Bucur's arrest, Ardelianu drove up to the location where Bucur had parked his vehicle and observed the arrest.  He then exited his vehicle and went into a nearby 24-hour business.  While he was in there, Officers matched Ardelianu to ATM surveillance images of other subjects who had made unauthorized EBT withdrawals that night.  When Aredelianu exited, he was also arrested on state charges.  During an inventory search of Ardelianu and his vehicle, officers found a cell phone, a laptop computer, and skimming tools.  Both Bucur and Ardelianu presented fake IDs bearing aliases.  They were booked on state charges under these aliases and bonded out before the SoCal CFTF could learn their true identities from Romanian law enforcement.

23.    On the night of Bucur and Ardelianu's arrest, ATM surveillance images showed that MIHAILESCU made unauthorized withdrawals alongside Ardelianu and Parschiv made unauthorized withdrawals alongside Bucur.

24.    Bucur and Ardelinau's arrest did not deter MIHAILESCU.  As outlined in the Complaint Affidavit, MIHAILESCU continued to make unauthorized EBT withdrawals in San Diego and elsewhere, including the next night, on September 2, 2022.  Between September 2, 2022 and October 3, 2024, ATM surveillance images and CalDSS records showed that MIHAILESCU attempted to withdraw $220,260.00 from the EBT accounts of hundreds of victims.  The victims were from San Diego, Los Angeles, Kern, Riverside, Orange, and San Bernadino Counties.

25.    The USSS and local law enforcement interviewed some of the victims whose EBT accounts MIHAILESCU used.   The victims confirmed that they had not authorized MIHAILESCU or his coconspirators to access their accounts and consistently stated that, despite being reimbursed approximately 10 days after the fraud occurred, the theft forced them to pay their rent late and made them unable to buy food in the interim.

<u>The TARGET DEVICE</u>

26.    At the beginning of October 2024, San Bernadino County law enforcement conducted an operation where they monitored local ATMs for fraudulent EBT withdrawals.   On October 3, 2024, they observed MIHAILESCU make 10 to 15 transactions at a Montclair, CA ATM where he was driving a black BMW SUV and was the only person present at the ATM.  Offsite monitors advised that fraudulent EBT withdrawals had just occurred at that ATM.  (ATM surveillance images from the Montclair ATM showed that MIHAILESCU had also used the ATM on October 1, 2024 and October 2, 2024 to make unauthorized withdrawals from victims' EBT accounts.)

27.    After MIHAILESCU drove out of the ATM parking lot, a marked police car conducted a traffic stop and MIHAILESCU was arrested.  MIHAILESCU gave officers a fake name, "Alen Wagner," which matched three German IDs he was carrying with that name.  MIHAILESCU later admitted the name and IDs were fake.  In the black BMW SUV, officers found approximately $53,000 in cash and 36 payment cards

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-9-

bearing stickers with a dollar amount and a 4-5 digit number.  Based on their training and experience, officers suspected these numbers represented the account balance and PIN for the EBT account encoded on the card's magnetic strip.   The vehicle MIHAILESCU was driving had what appeared to be a stolen license plate taped over the vehicle's assigned license plate.  The vehicle's VIN had also been covered with black electric tape.  The **Target Device** was also seized from MIHAILESCU at the time of his arrest.  The USSS San Diego Field Office received the phone on or about November 15, 2024.

28.    To date, the SoCal CFTF has obtained warrants to search the cell phones and laptop seized from Bucur and Ardelianu, as well as cell phones seized from Trofin and Robert Stoica (also charged with stealing from victims EBT accounts in 24cr2194-WQH).  All of these searches confirm that people associated with MIHAILESCU are using cell phones in furtherance of access device fraud and access device fraud conspiracy and that evidence of these crimes are on stored on the coconspirators' phones.  For example:

a.    Bucur's phone had a video of the grey BMW that MIHAILESCU was driving when he installed a skimming device and pinhole camera on a San Diego ATM.  In the video from the phone, the BMW's assigned license plate was visible – unlike in the ATM surveillance video, where what appeared to be a stolen license plate for a Buick affixed to the car.  Bucur's phone also included video of a man installing a skimming device into an ATM, a video of a skimming device connected to a laptop, and images of electronic account information, skimming devices, and gift cards with what appeared to be handwritten PINs affixed to the cards.  One of the videos on Bucur's phone was of Ardelianu on a video call receiving instructions on how to use software that is commonly used to harvest and encode stolen electronic account information.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

b.    Ardelianu's phone, which, like the **Target Phone** was an iPhone, also contained text messages he exchanged with Bucur regarding skimming devices, messages he exchanged with unknown conspirators regarding downloading stolen account information from skimming devices, images of California EBT account numbers and account balances, images of skimming equipment, and documents containing electronic account numbers and PINs.  Both Bucur and Ardelianu's phones also contained address information for Airbnb rentals where they each stayed while in San Diego.

c.    Trofin's cell phone showed that it stored and organized skimmed electronic account information.  In that case, the phone was a less-expensive Samsung Galaxy A14 (compared to an iPhone) and is believed to have been used primarily to connect via Bluetooth to skimming devices from which it could download stored stolen account information.

d.    Stoica's phone, which was an iPhone, contained images of gift cards on which were affixed stickers with numbers that appear to be PINs and, in some cases, account balances.  Stoica's phone had a video of him and his coconspirator Chaima Chaabani at a Los Angeles restaurant with MIHAILESCU.  In another photo, Stoica was photographed at a Los Angeles restaurant with Ardelianu.  Stoica's phone also had messages that he sent and received in furtherance of access fraud-related activity.

29.    In my training and experience, the individuals who build and manufacture these skimming devices are not usually the same individuals who install them.  Similarly, once the skimmed data is retrieved from the compromised point of sale terminal, it must be re-encoded onto new cards and paired up with the corresponding PIN so that funds can then be withdrawn from the compromised account.  Frequently, individuals engaged in EBT theft will call the free hotlines that California and other states operate that let benefit recipients check their account balance and the date the

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-11-

1   benefits will be distributed.  In this way, these members of the conspiracy can identify

2   in advance how much to try and withdraw and when.

3       30.     Coordinating the dissemination of these cards and PINs requires

4   organization. In part for these reasons, I believe that MIHAILESCU and his

5   coconspirators are likely working with others as part of a scheme to steal and misuse

6   California EBT account information. Based on the evidence described above, I believe

7   that MIHAILESCU is working with the conspirators listed above and with unidentified

8   coconspirators to install skimming devices and to obtain and use skimmed account

9   information to make unauthorized withdrawals from victims' accounts and that he and

10  his coconspirators are using phones in furtherance of this activity.

11      31.     In part for these reasons, I believe that evidence of and relating to the

12  scheme and conspiracy to steal and misuse California EBT account information is likely

13  to be found on the **Target Device**, including but not limited to coconspirator

14  communications, coconspirator contact information, and location data tending to

15  identify or pertain to the conspiracy's activities in San Diego.

16      32.     I submit there is probable cause to search the **Target Device** for evidence

17  of and relating to skimming and EBT fraud-related activity. Individuals engaged in

18  similar EBT fraud activities in Southern California have been shown to use their phones

19  to communicate with coconspirators, research ATM locations, navigate, store and

20  record fraud-related information (e.g. electronic account information, photos and videos

21  of contraband), conduct balance inquiries via phone and the Internet, and facilitate

22  travel and lodging while conducting fraud-related activities. The investigation to date

23  shows that EBT fraud and related skimming activities involving Los Angeles area

24  Romanians has occurred in San Diego County since at least March 2022.

25      33.     Because MIHAILESCU's EBT theft activities occurred beginning no later

26  than July 1, 2022, this application and warrant seek authorization to search the **Target**

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT                    -12-

**Device** from July 1, 2022 through and including the date of MIHAILESCU's arrest on October 3, 2024.

Procedures for Electronically-Stored Information

**Cell Phones**

34.     It is not possible to determine, merely by knowing the cellular phone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

35.     Following the issuance of this warrant, the USSS will collect the subject cellular telephone and subject it to analysis. If there are technological challenges, the examiners may need to consult with other law enforcement partners. All forensic

analysis of the data contained within the telephone and its memory cards will employ

search protocols directed exclusively to the identification and extraction of data within

the scope of this warrant.

36. Based on the foregoing, identifying and extracting data subject to seizure

pursuant to this warrant may require a range of data analysis techniques, including

manual review, and, consequently, may take weeks or months. The personnel

conducting the identification and extraction of data will complete the analysis within

ninety (**90**) days of the date the warrant is signed, absent further application to this court.

<u>PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE</u>

37. The USSS is unaware of prior attempts to obtain this evidence.

<u>CONCLUSION</u>

38. Based on the evidence and experience described above, I submit there is

probable cause to believe that evidence, fruits, and instrumentalities of violation of

federal criminal law, namely, 18 U.S.C. §§ 1029(a)(2), (b)(2) (access device

conspiracy) and 1029(a)(2), (b)(1) (use and attempted use of unauthorized access

devices), as described in Attachment B, are more likely than not to be found on the

**Target Device**, as described in Attachment A.

Special Agent Erik La Com
U.S. Secret Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by telephone on February 5, 2025.

HON. ALLISON H. GODDARD
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF SEARCH
WARRANT

-14-

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

a. Black Apple iPhone with a cracked back (inventoried as #412-2025-IE-000036) (the "Target Device").

The Target Device is currently in the custody and control of U.S. Secret Service at 550 W. C St, Suite 660, San Diego, CA 92101.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the Target Device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, mobile messaging application content, social media content, images, records from third-party and websites applications (e.g., Google Maps), photographs, audio files, videos, browsing history, and location data, for the period of July 1, 2022, up to and including October 3, 2024, for the following:

a.  Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to access devices (e.g., electronic benefit transfer (EBT) cards, debit cards, the electronic track data embedded on such cards) or account information associated with such device (e.g., PINs, names), including but not limited to the unauthorized use, interception, collection, transfer, or possession of such device or related account information;

b.  Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to an agreement or conspiracy to engage in the unauthorized use or attempted use of unauthorized access devices like stolen public assistance EBT account information such as account numbers and PINs;

c.  Communications, records, images, videos, electronic files, and attachments tending to discuss or reflect an intent to steal or misuse access devices, or account information (e.g., EBT account numbers and PINs) associated with such device, that would tend to discuss or

establish motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident, with regard to the crimes under investigation, or the knowledge, intent, or willingness to conspire or agree to engage in such conduct;

d.     Communications, records, images, videos, electronic files, and attachments tending to discuss, reflect, or pertain to the proceeds, fruits, or instrumentalities of or from the use of unauthorized access devices like EBT account information, credit card information, or debit card information;

e.     Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of, or persons with control over or access to, the Target Device, including the telephone number(s) associated with any of the Target Device and, without any date restriction, all contact entries in the Target Device;

f.     Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of the Target Device's state of mind, knowledge, motive, and voluntariness regarding the crimes under investigation, such as any communications, records, or attachments demonstrating knowledge that EBT or debit or credit card account information, PINs, account balance, victim names, skimmers, or access devices were being used without authorization or with an intent to deceive;

g.     Communications, records, images, videos, electronic files, and attachments tending to identify or establish the use of fake or stolen personal identification information, such as the names, account numbers, or PINs found on legitimate California Advantage cards;

h.     Communications, records, images, videos, electronic files, and attachments tending to identify any co-conspirators, co-schemers, criminal associates, or others involved in a scheme to steal or misuse access device card information; and

i.  Communications, records, images, videos, electronic files, and attachments that provide context to any communications, records, images, videos, electronic files, and attachments described above, such as electronic messages sent or received in temporal proximity to any relevant electronic message and any content tending to identify the user(s) of the device to be searched;

**which are evidence of violations of 18 U.S.C. § 1029(a)(2), (b)(2) (access device conspiracy), and § 1029(a)(2), (b)(1) (use and attempted use of unauthorized access devices).**